Kevin L. SHEHEE, Plaintiff–Appellee,

v.

Mark H. LUTTRELL, Individually; Jonathan C. Miner, Individually; Greg Fleming, Individually; Kenny Morgan, Individually; Margaret C. Hambrick, Individually; Edward L. Crosley, Individually; Mark Henry, Individually; Michael Robertson, Individually, Defendants–Appellants.

No. 98–5614.

United States Court of Appeals, Sixth Circuit.

Submitted Aug. 4, 1999.

Decided Oct. 1, 1999.*

* This decision was originally issued as an "unpublished decision" filed on October 1, 1999. On November 8, 1999, the court designated the opinion as one recommended for full-text publication.

Barbara L. Herwig, Peter R. Maier (briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, D.C., for Appellants.

Kevin L. Shehee (briefed), Ashland, Kentucky, pro se.

Before: JONES, BATCHELDER, and COLE, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Defendants–Appellants are prison employees or officials of the Federal Correctional Institute at Manchester, Kentucky ("FCI–Manchester"), or officials employed by the Bureau of Prisons ("BOP"). Plaintiff–Appellee Kevin L. Shehee filed a *Bivens* suit against the defendants, alleging various violations of his constitutional rights. Defendants now appeal the district court's denial of their motion to dismiss and/or summary judgment based on quali-fied immunity. For the reasons that follow, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings in accordance with this opinion.

## I.

Shehee, an inmate at FCI–Manchester, was assigned to work in the prison commissary, a coveted assignment based on its higher pay and favorable working conditions. Defendant Greg Fleming was employed at FCI–Manchester as the Commissary Supervisor and Defendant Kenny Morgan was employed as the Warehouse Foreman. Both Fleming and Morgan were supervised by Defendant Michael Robertson.

According to Shehee, Fleming expected kickbacks in the form of soft drinks and stamps from the commissary in exchange for allowing inmates to continue to work there. Shehee claimed that he refused to cooperate in the kickback scheme and this refusal rendered him vulnerable to accusations of wrongdoing by Fleming which, in turn, jeopardized his job in the commissary.

In June 1995, Shehee and six other inmate commissary workers were questioned by Fleming and Morgan regarding the presence of over-ripe fruit found in a bag in a cooler. Fleming and Morgan accused the inmates of attempting to make alcohol from the fruit; however, the inmates claimed that it was standard practice to put damaged fruit in a bag for disposal at a later time. Thereafter, three of the seven inmates (including Shehee) were placed in isolation/administrative detention pending the investigation for attempted manufacture of alcohol. No disciplinary charges were ever filed against any of the inmates arising from these allegations.

Shehee was released from administrative detention on June 19, 1995 and returned to work in the commissary. Shehee then filed informal grievance complaints against Fleming and Morgan,

claiming that the alcohol allegation was simply an excuse to harass Shehee in order to have him placed in administrative detention. Shehee contended that Fleming and Morgan wanted to harass him because he would not cooperate in their kickback scheme. Fleming and Morgan's supervisor, Robertson, was required to respond to Shehee's grievances to the unit team counselor.

On June 24, 1995, after Shehee filed his grievances, Robertson fired him from his commissary job. Robertson allegedly told Shehee that he could not work for him because he had filed grievances against Robertson's supervisees. After Shehee was fired, the other six inmates involved in the alleged alcohol scheme were also fired from commissary duties.

Thereafter, Shehee filed a "request for administrative remedy," claiming that Robertson, Fleming and Morgan retaliated against him. Assistant Warden Jonathan C. Miner responded to Shehee's request by stating that an inmate may be removed from commissary duties at the discretion of the supervisor. Miner did not address Shehee's retaliation claims. Shehee then appealed Miner's decision to Margaret C. Hambrick, the regional director. Defendant Mark Henry responded on behalf of Hambrick, again reiterating that Shehee was fired for cause and ignoring Shehee's retaliation claims. Finally, Shehee appealed to BOP Administrator Edward L. Crosley. Crosley determined that Shehee's dismissal was appropriate under BOP policies but, again, failed to address Shehee's retaliation claims.

Shehee also complained to Congressman Tony B. Hall. Congressman Hall inquired about Shehee's complaints to then-warden Mark H. Luttrell. Luttrell responded to Congressman Hall in a letter stating that Shehee was fired for making intoxicants and to allow other inmates the opportunity to work in the commissary.

On May 14, 1996, Shehee filed this action under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Kentucky. Because the named defendants were federal officials and therefore not acting under color of state law, the district court treated Shehee's action as one arising under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] In his complaint, Shehee alleged that Fleming, Morgan and Robertson retaliated against him by wrongfully subjecting him to an investigation and firing him from his commissary job, and that Miner, Hambrick, Henry, Crosley and Luttrell failed to take remedial action.[2] Shehee further claimed that the defendants violated his rights under the Equal Protection Clause by treating him differently from other inmates assigned to commissary jobs. Finally, Shehee contended that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Shehee sought injunctive relief and damages from the defendants in their individual capacities.

Adopting a magistrate judge's report and recommendation, the district court dismissed Shehee's Eighth Amendment claims, as well as his claims for injunctive relief. The defendants then moved for

---

**1.** In *Bivens,* the Supreme Court held that when "a federal agent acting under color of his authority" violates the Constitution, the agent's victim may recover damages against the agent. 403 U.S. at 389, 91 S.Ct. 1999.

**2.** In addition to his claims regarding his firing from the commissary, Shehee alleges that Robertson retaliated against him by charging an excessive mark-up on Shehee's request for ceramics materials that were necessary for participation in a ceramics class. Shehee contends that the typical mark-up would be five percent for materials from a retailer; however, Robertson charged him a twenty-five to thirty percent mark-up typical for materials from a distributor. Shehee claims that Robertson deliberately misclassified Shehee's order as being one for a distributor so that the excessive mark-up could be charged. Shehee further claims that Robertson knew that he could not afford that amount and, therefore, would be deprived of participation in the ceramics class.

dismissal and/or summary judgment on Shehee's remaining claims, asserting, *inter alia*, that they were entitled to qualified immunity. Again adopting a magistrate judge's report and recommendation with one exception, the district court denied summary judgment in favor of the defendants, with the exception of dismissing any claims against Miner, Hambrick, Crosley and Luttrell related to the ceramics materials.[3] The district court denied summary judgment in favor of the defendants based on qualified immunity, finding that the law regarding Shehee's First Amendment and Fifth Amendment claims was clearly established. Defendants filed a notice of interlocutory appeal of the district court's denial of their defense of qualified immunity.[4]

## II.

■ We review a district court's denial of qualified immunity de novo. *See Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir.1999). At the outset, however, we must consider whether we have jurisdiction to hear this interlocutory appeal. "A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir.1998) (citations omitted). Thus, in order for an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case. *See id.* at 564. "Only if the undisputed facts or the evidence viewed in the light most favorable to the plaintiff fail to establish a prima facie violation of clear constitutional law may we decide that the defendant is entitled to qualified immunity on an

interlocutory appeal." *Id.* at 563 (citation omitted).

■ Here, Shehee argues that factual disputes preclude our jurisdiction over this appeal. According to Shehee, defendants have not conceded to the facts as he alleges them, and this court must therefore resolve factual disputes in order to determine whether defendants are entitled to qualified immunity. We disagree. Defendants are not disputing the facts in their qualified immunity arguments; rather, defendants argue that even if Shehee's claims are true, they cannot be liable because Shehee's only allegations against them concern the denial of Shehee's administrative complaints and their failure to take remedial action. In addition, defendants argue that they cannot be liable under an equal protection theory. These are legal arguments. Accordingly, we accept Shehee's factual allegations as true and now must determine defendants' entitlement to qualified immunity under those facts.

## III.

■■ Qualified immunity is an affirmative defense that extends to government officials performing discretionary functions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under this judicially created exception, government officials are immune from civil liability when acting in an official capacity if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727. This court applies a two-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) whether the plaintiff has shown a violation of a constitutionally protected right; and, if so, (2) whether that right

---

**3.** The order inexplicably omitted Henry's name from that dismissal. Following the court's reasoning, however, that omission was merely an oversight.

**4.** Although Defendant Robertson was named in the notice of appeal, he did not file a brief and apparently has abandoned this appeal.

was clearly established such that a reasonable official would have understood that his behavior violated that right. *See Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir.1998).

### A. Crosley, Hambrick, Henry, Miner and Luttrell

■ Defendants Crosley, Hambrick, Henry, Miner and Luttrell argue that they were not involved in Shehee's termination from his commissary job and that their only roles in this action involve the denial of administrative grievances or the failure to act; thus, they cannot be liable under § 1983. We agree.

■ This court has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees. *See Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982). Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* Here, the district court found that Crosley, Hambrick, Henry, Miner and Luttrell knew of the alleged violations against Shehee, but failed to act when the situation was in their control. The district court held that this failure to act constituted an acquiescence in the unconstitutional conduct. We disagree with that conclusion.

■ In *Poe v. Haydon*, 853 F.2d 418 (6th Cir.1988), this court held that a state employee's claims of sexual harassment under § 1983 could not be sustained against the supervisors of the offending employees. *See id.* at 429. We stated that:

> Even assuming the allegations in [plaintiff's] complaint are true, she has not

averred that any of the supervisory officials who [are] defendants in this case actively participated in or authorized any harassment.... At best, she has merely claimed that the appellants were aware of alleged harassment, but did not take appropriate action. This is insufficient to impose liability on supervisory personnel under § 1983.

*Id.* (internal quotations and citations omitted). Thus, liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 1763, 143 L.Ed.2d 793 (1999).

In the present case, Shehee's only allegations against Crosley, Hambrick, Henry and Miner involve their denial of his administrative grievances and their failure to remedy the alleged retaliatory behavior. With respect to Luttrell, Shehee's only claim is Luttrell's alleged failure to intervene on Shehee's behalf. There is no allegation that any of these defendants directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts against Shehee, nor is there any evidence that these defendants violated Shehee's right to equal protection under the law. Accordingly, we hold that as a matter of law Crosley, Hambrick, Henry, Miner and Luttrell neither committed a constitutional violation nor violated a clearly established right to which Shehee was entitled.

### B. Fleming and Morgan

■ Fleming and Morgan also argue that they are entitled to qualified immunity because their actions did not constitute a violation of Shehee's rights. With respect to Shehee's First Amendment retaliation claims, Fleming and Morgan contend that they cannot be liable because they neither fired nor had the authority to fire Shehee from his job at the commissary, the retaliatory act of which Shehee complains. We agree. In order to set forth a First Amendment retaliation claim,

a plaintiff must establish that: 1) he was engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and 3) the adverse action was motivated, in least in part, by the protected conduct. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Here, Shehee's protected conduct was the filing of grievances, and the alleged adverse action taken against him was his dismissal from his commissary job. The defect in Shehee's claim is that neither Fleming nor Morgan were involved in his firing, the alleged adverse action. Despite Shehee's contention that Fleming and Morgan instigated his firing, these men did not have the ability to terminate Shehee from his commissary position. For this reason, Shehee simply does not set forth a valid First Amendment retaliation claim against Fleming or Morgan.

■■■■ Shehee also claims that Fleming and Morgan harassed him by fabricating the alcohol allegation because Shehee refused to participate in Fleming's alleged kickback scheme. This claim does not implicate Shehee's First Amendment rights and, thus, is more properly characterized as a substantive due process claim of "abuse of authority."[5] *See id.* at 387–88. Abuse of authority is not a constitutional violation unless the behavior "shocks the conscience" or is an "egregious abuse of governmental power." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1717 (1998); *Thaddeus–X*, 175 F.3d at 387–88. Fleming and Morgan contend that accepting Shehee's allegations as true, their behavior did not "shock the conscience." Again, we agree. Shehee admits to the presence of rotting fruit in a

cooler in the commissary, but claims that Fleming and Morgan fabricated the allegation that Shehee was attempting to make alcohol from the fruit in retaliation for Shehee's refusal to participate in Fleming's kickback scheme. Shehee, however, acknowledges that Fleming and Morgan accused all seven inmates who worked in the commissary of attempting to make alcohol. We do not believe that Fleming and Morgan's actions of accusing all the inmates who worked in the commissary of attempting to make alcohol after finding rotting fruit are actions that "shock the conscience," even if done with a retaliatory motive. Accordingly, Shehee's allegations do not rise to the level of an abuse of authority claim.

■■■■ Finally, Shehee claims that his right to equal protection under the law was violated because he was treated differently from other inmates when he was fired before the other participants in the alcohol scheme were fired. We first note that Shehee has not established that he is a member of a protected class as is necessary for an equal protection claim. *See Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990). Shehee still can make out an equal protection claim, however, if he can show that defendants' "different" classification of him was not rationally related to a legitimate government interest. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Even if Shehee could make this showing, we fail to see how the defendants can be liable for treating him differently by firing him, when they had no authority to do so. It is undisputed that Shehee was fired by Robertson, who is not a party to this appeal. Accordingly, She-

---

**5.** In *Thaddeus–X*, we clarified the difference between retaliation claims arising under the Due Process Clause of the Fourteenth Amendment and those arising under a more specific provision of the Constitution. *See* 175 F.3d at 387. For substantive due process claims, the retaliatory act must "shock the conscience." *Id.* For those claims arising from an enumer-

ated constitutional violation, however, the retaliatory act does not have to reach the heightened standard of shocking the conscience. *See id.* at 387–88. Rather, the retaliatory act must be such that it would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See id.* at 394.

hee has failed to set forth a valid equal protection claim against the defendants.

## IV.

For the foregoing reasons, we find that Shehee has not set forth a valid claim that Crosley, Hambrick, Henry, Miner, Luttrell, Fleming or Morgan violated a clearly established constitutional right. We therefore **REVERSE** the judgment of the district court denying qualified immunity to the defendants and **REMAND** this case to that court for further proceedings in accordance with this opinion.