**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0450n.06

**No. 10-1447**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| RICKY LEE BROYLES, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | |
| | ) | **Apr 30, 2012** |
| v. | ) | LEONARD GREEN, Clerk |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | ON APPEAL FROM THE UNITED |
| INC., named as Correctional Medical Service, | ) | STATES DISTRICT COURT FOR THE |
| Inc.; C. PEROG, Medical Secretary; | ) | WESTERN DISTRICT OF MICHIGAN |
| TAMERLA HAMILTON; AMY MEYER and | ) | |
| JOHN DOE, Medical Service Supervisor for | ) | OPINION |
| MCF, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: GILMAN, ROGERS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge**. Plaintiff Rickey Lee Broyles appeals the dismissal with prejudice of his amended complaint against correctional facility nurses Tamerla Hamilton and Amy Meyer and an unknown medical supervisor. Broyles brought claims under 42 U.S.C. § 1983 based on allegedly inadequate medical treatment, which he claims violated his Eighth Amendment rights. The district court held that the amended complaint failed to allege facts that amount to deliberate indifference as required to state a claim under the Eighth Amendment. Because Broyles has alleged at most negligence, we **AFFIRM** the district court's dismissal of the amended complaint.

No. 10-1447
*Broyles v. Correctional Medical Services, et al.*

## I. BACKGROUND

**A.      Factual Background**

On August 20, 2005, while an inmate at the Muskegon Correctional Facility, Broyles spoke with health care nurse Tamerla Hamilton on the phone and requested medical attention for a "partial blur in the vision of the corner of his right eye." As Hamilton instructed, Broyles sent the health care unit a written request form the same day. Health care responded on August 22 with a notice stating Broyles had an appointment for August 23. However, Broyles was not on the health care call-out list on either August 23 or 24. Broyles had a corrections officer call health care on August 24 with the same complaint and Broyles was sent to health care and examined by a nurse, who did not discover any abnormal findings. The nurse scheduled Broyles to see optometry and informed him to contact health care if there was no improvement or if his problem worsened.

On August 26, Broyles had an officer call health care to complain that his condition was worsening. Nurse Amy Meyer informed Broyles over the phone that he was scheduled to see optometry, but did not arrange for him to be seen by health care that day. On August 29, Broyles again had an officer call health care because the vision blur worsened daily. Medical secretary C. Perog informed Broyles that she did not see his name on the list to see optometry or see that he had filed any health care request. She said he would need to send another request, which he did. Perog responded in writing on August 31 that Broyles had been placed back on the eye clinic waiting list for his "non-emergent symptoms."

On September 6, Broyles again had an officer call health care complaining that his condition was worsening. Broyles was examined that day by a health care nurse, who informed Broyles that

he saw nothing wrong with his eye. The nurse said that Broyles had been on a previous list to see optometry, but that he had been removed because the list was long and Broyles's medical problem had been considered non-emergent. The nurse put Broyles back on the eye clinic waiting list.

On September 8, Broyles was seen by the clinic optometrist who diagnosed a retina detachment in Broyles's right eye. On September 12, Broyles went to the T.L.C. Laser Center and was examined by eye-specialist Dr. Gordon, who diagnosed a serious retina detachment. Dr. Gordon told Broyles he should have gotten medical attention when he first noticed the slight blur in the corner of his eye. Dr. Gordon stated this delay allowed the retina to progressively detach past the half-way point and it was unlikely Broyles's vision in that eye could be repaired. The next day, he was seen by Dr. Gordon and another eye-specialist, Dr. Lavery, both of whom repeated Dr. Gordon's earlier statements. Beginning on September 14, 2005, Broyles had a series of surgeries attempting to reattach and repair his retina and several follow up examinations at the T.L.C. Laser Center. These surgeries did not successfully repair Broyles's vision.

**B.      Procedural History**

On July 20, 2007, Broyles filed this § 1983 action against Correctional Medical Services, Inc. ("CMS") and C. Perog, a medical secretary. Both CMS and Perog filed motions to dismiss the complaint. On August 13, 2007, Broyles filed an amendment to his complaint, naming three new defendants: Tamerla Hamilton, R.N.; Amy Meyer, R.N.; and John Doe, "Medical Service Supervisor." On April 4, 2008, the district court granted CMS's and Perog's motions and struck the proposed amended complaint as futile. Specifically, the court held Broyles failed to allege facts suggesting CMS had a policy, practice, or custom that resulted in his injury. The court also held that

Broyles alleged at most negligence on the part of Perog, which is insufficient to establish an Eighth Amendment violation. Because the facts alleged against the proposed Defendants in the amended complaint amounted only to negligence, the court also dismissed the amendment as futile.

Broyles appealed the district court's order to this Court, which affirmed the dismissal of CMS and Perog. *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241 (6th Cir. Jan. 23, 2009). However, this Court reversed the district court's order striking Broyles's amended complaint because he had an "absolute right" to amend the complaint once as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). *Id.* at *3-4. This Court remanded the case with instructions to allow the amended complaint. *Id.* After the amended complaint was reinstated, the district court reviewed it in accordance with 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c) to determine if it was frivolous, malicious, or failed to state a claim upon which relief can be granted. In an order filed March 16, 2010, the district court dismissed the amended complaint with prejudice for failure to state a valid claim. Specifically, the court found that Broyles stated at most a claim for negligence or medical malpractice, but not constitutional deliberate indifference. Broyles appeals this determination and the dismissal of his amended complaint.

## II. DISCUSSION

### A.    Standard of Review

This Court reviews de novo a district court's decision to dismiss under 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e(c). *Grinter v. Knight*, 532 F.3d 567, 571-72 (6th Cir. 2008). In assessing a complaint for failure to state a claim, this Court must construe the complaint in the light most favorable to the plaintiff, accept his factual allegations as true, and determine whether the

complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The pleadings of pro se petitioners, such as Broyles, are liberally construed and held to a less stringent standard than those prepared by attorneys. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

**B.      Eighth Amendment Violations**

Broyles brought his claims under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must allege two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Broyles argues that Hamilton, Meyer, and Doe violated his Eighth Amendment rights. "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison*

*Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837-47 (1994)). Mere negligence will not suffice. *Farmer*, 511 U.S. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106.

Although the detachment of Broyles's retina was a latent medical injury, Broyles has established the objective component requiring a sufficiently serious medical need. In claims involving non-obvious complaints of a serious need for medical care, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Broyles has met this requirement by alleging statements by Dr. Gordon and Dr. Lavery linking the delay in treatment to the permanency of his vision impairment. Broyles's claims, therefore, depend on whether the subjective component is satisfied for each Defendant.

### 1.    **Defendant Hamilton**

Broyles asserts that Hamilton was deliberately indifferent to his serious medical need when she made "an incompetent, and inadequate medical determination" that his condition was non-emergent following his initial phone call and written health care request filed on August 20, 2005.

Broyles also suggests that Hamilton may be responsible for the health care unit's failure to schedule Broyles to be seen by a nurse on August 23 as promised.

In order to be held liable for deliberate indifference, a prison official must know of and disregard an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. at 837-38. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. However, a claimant is not necessarily required to prove that the prison official had actual knowledge of the substantial risk; rather, one may conclude that a prison official knew of a severe risk from the very fact that the risk was obvious. *Id.* at 842-43.

The seriousness of Broyles's condition and the risk posed by delay were not obvious. Therefore, Broyles had to allege facts that could prove both that Hamilton was aware of facts from which she could draw an inference that a substantial risk of serious harm existed to Broyles's health and that she in fact drew that inference. *See id.* at 837. The only facts Broyles alleges that Hamilton knew consist of his phone call and written health care request on August 20, which described a partial blur in the vision of his right eye. Broyles's complaint alleges Hamilton was responsible for failing to ensure that he see a nurse on August 23; however, he did see a nurse on August 24 and the nurse found nothing abnormal with his eye. In essence, Broyles disagrees with Hamilton's determination that his condition was non-emergent. "An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983." *Clark v. Corrs. Corp. of Am.*, 98 F. App'x 413, 416 (6th Cir. 2004) (citing *Estelle*, 429 U.S. at 97); *Byrd v. Wilson*, 701 F.2d 592, 595 n.2 (6th Cir. 1983). The complaint contains no allegations that Hamilton specifically knew Broyles faced a

substantial risk of serious harm and disregarded that substantial risk by failing to take reasonable measures to abate it as is required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 847.

### 2.      Defendant Meyer

When Broyles complained for the third time about his vision impairment on August 26, Broyles asserts Meyer acted with deliberate indifference by failing to send him to health care that same day. Broyles alleges that "medical policy and procedure" required a prisoner be referred to a medical service provider if a third complaint is made without improvement. He alleges that, at the time Meyer failed to schedule an examination of Broyles, she was aware of his prior two complaints, the fact that he was examined on August 24, and the fact that the nurse had told him to contact health care if his condition worsened or failed to improve. The facts Broyles alleges as to Meyer's knowledge also include the classification of his condition as non-emergent and the determination of an examining nurse that Broyles's eye looked normal with no abnormal findings.

Broyles's allegations are similar to those made by the plaintiff in *Clark v. Corrections Corporation of America*:

> [the plaintiff] acknowledge[d] he received medical treatment, arguing instead that once prison officials knew that his jaw was broken (a fact unknown for several weeks due to misdiagnosis), they should have taken immediate steps to treat it. As a result of their delay, he alleges, he now has permanent nerve damage that can only be corrected by surgery.

98 F. App'x at 416. In *Clark*, this Court emphasized that it "is reluctant to second guess medical judgments where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment." *Id.* (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (1976)). As with

Hamilton, Broyles's complaint contains no allegations that Meyer specifically knew Broyles faced a substantial risk of serious harm and disregarded that substantial risk by failing to take reasonable measures to abate it as is required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 847.

### 3. Defendant Doe

In the amended complaint, Broyles sues an unknown medical services supervisor, John Doe, in both his individual and official capacities; however, Broyles makes allegations only on an individual-capacity basis in his amended complaint.[1] Broyles alleges that an unknown medical services supervisor "failed to properly supervise, develop, and provide an adequate medical system and staff to respond to medical emergencies." Broyles asserts this failure to supervise and train allowed nurses and staff to make inadequate and incompetent medical determinations. These general allegations are insufficient to establish liability under § 1983 for failure to supervise. Section 1983 liability "must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, in such claims, the plaintiff must allege facts showing the defendant "either encouraged the specific incident of misconduct or in some other

---

[1]Broyles does not allege that Doe was a policymaker involved in the implementation of a policy, practice, or custom that resulted in his injury. Even if Broyles did allege facts relevant to the inquiry of Doe's liability in his official capacity, this Court has already addressed and rejected this argument in the prior appeal in this case. There, Broyles alleged CMS was liable because it failed to properly train its personnel on written CMS policies, failed to discipline personnel who violated its written policies, and violated its written policies by permitting medical decisions to be made based upon costs. *Broyles*, 2009 WL 3154241, at * 2. This Court held that "Broyles's bare allegations of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief." *Id.* (citation omitted). For the same reasons, even if Broyles had repeated those allegations under an official-capacity theory of liability against Doe, he would have failed to state such a claim here.

way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (citation omitted). To attempt to hold John Doe liable in his individual capacity simply for his alleged failure to adequately train employees "improperly conflates a § 1983 claim of individual supervisor liability with one of municipal liability." *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008). Because Broyles does not allege that Doe took any deliberate action or otherwise involved himself personally in allegedly unconstitutional acts of others, Broyles's failure-to-supervise claim fails.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal with prejudice of Broyles's amended complaint for failure to state a claim upon which relief can be granted.