NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0293n.06

No. 11-2246

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 25, 2013*
DEBORAH S. HUNT, Clerk

CUREN ESSEX, ALICIA BULKO,
SUSAN COOK, ELIZABETH ZUBOR
and SUSAN TERRELL,

     Plaintiffs-Appellees,

v.

COUNTY OF LIVINGSTON and
ROBERT BEZOTTE,

     Defendants-Appellants,

TOM CREMONTE and RANDY BOOS,

     Defendants.

                          /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    CLAY, GILMAN, and McKEAGUE, Circuit Judges.

    **CLAY, Circuit Judge.**  Sheriff Robert Bezotte brings this interlocutory appeal from an order

of the district court denying him qualified immunity with respect to Plaintiffs' various claims

brought under 42 U.S.C. § 1983.  The County of Livingston ("County") also appeals the district

court's order denying its summary judgment motion on the merits of Plaintiffs' § 1983 claims.

Plaintiffs alleged that Defendants' failure to train or supervise caused the sexual crimes committed

against Plaintiffs, which violated their constitutional rights to be free from unreasonable searches

and seizures, cruel and unusual punishment, and their right to equal protection under the law.

For the following reasons, we **REVERSE** in part the district court's order and **REMAND** with instructions that the district court enter an order granting Bezotte qualified immunity and dismissing the case against him in his individual capacity. We **DISMISS** the County's appeal for lack of jurisdiction.

## BACKGROUND

### A. Factual Background

In February and April of 2008, a Livingston County road patrol deputy, Randy Boos, sexually assaulted each of the Plaintiffs on different occasions while transporting them from the Livingston County Jail to the county courthouse. Upon learning about the allegations, the County suspended Boos, conducted an internal investigation, and notified the Michigan State Police of the alleged conduct. Boos was charged with the sexual assaults and pleaded guilty to three counts of second-degree criminal sexual conduct. He is now serving a sentence of three years and seven months for his crimes.

In a deposition for the instant action, Boos asserted that he did not know his acts were criminal because he believed that the sexual acts he engaged in with Plaintiffs were consensual. Despite the clear prohibition under Michigan law, *see* Mich. Comp. Laws § 750.520c(1)(k), Boos averred that he was not aware that an inmate or detainee could not provide valid consent to a police officer and that he never received training on sexual assault or the proper conduct in transporting detainees. Boos further claimed that had he been aware that Plaintiffs could not consent, he would not have accepted their alleged advances. Notwithstanding, he admitted to a general awareness that his actions were wrong.

Robert Bezotte, who at the relevant time was the sheriff of Livingston County, was responsible for implementing policies and procedures on training for road patrol deputies. Although Bezotte had read in newspapers about sexual assaults on inmates by law enforcement officers occurring in other jurisdictions, he believed that it was common sense that his deputies knew that they could not commit any criminal acts. Consequently, Bezotte admittedly did not provide any specific training for road patrol deputies that sexual contact with inmates or detainees was expressly prohibited. There is no evidence or any suggestion by Plaintiffs that Bezotte was in any way involved in Boos' misconduct or actively participated in such a way as to cause Plaintiffs' injuries.

## B.      Procedural History

On March 24, 2009, Plaintiffs[1] filed a § 1983 lawsuit against Bezotte, Boos, and Tom Cremonte (the jail administrator) in their individual capacities; and against Livingston County. Plaintiffs claimed that the County, Bezotte, and Cremonte violated their Fourth, Eighth, and Fourteenth[2] Amendment rights when Defendants: 1) failed to adequately train deputies on sexual

---

[1]Plaintiffs Curen Essex, Alicia Bulko, Susan Cook, Elizabeth Zubor were the original parties to the action in March 2009. Susan Terrell's identical suit was consolidated with the original action one year later.

[2]In the instant case, because some of the Plaintiffs at the time of injury were pretrial detainees (rather than convicted prisoners), the applicable constitutional provision is the Due Process Clause of the Fourteenth Amendment (rather than the Eighth Amendment). *See Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002). However, this does not change our analysis with respect to the claims against Bezotte or the County. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (conducting supervisory-liability analysis in pretrial detainee's § 1983 lawsuit); *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494–95 (6th Cir. 2008) (asserting that the same deliberate-indifference inquiry applies under the Fourteenth Amendment as under the Eighth Amendment).

assault; 2) failed to adequately supervise Boos; and thus, 3) permitted the sexual assaults in violation of the Equal Protection Clause.

On November 12, 2010, the County, Bezotte, and Cremonte filed a joint motion for summary judgment.[3] They argued that: 1) Bezotte and Cremonte were entitled to qualified immunity because they had no knowledge of Boos' illegal conduct and, thus, did not act with deliberate indifference in failing to train or supervise deputies to prevent sexual assault; 2) because Bezotte's and Cremonte's lack of knowledge barred liability against them, the County also could not be held liable; and 3) Plaintiffs could not show how the County's policy or customs caused the sexual assaults.

The district court granted Cremonte qualified immunity because he was not responsible for the policies governing road patrol deputies,[4] but denied the motion as to Bezotte and the County. The court found that there were still disputed questions of fact as to whether Bezotte, as a policymaker, and the County were deliberately indifferent in failing to train road patrol deputies on sexual assaults or in failing to supervise Boos. The district court, however, made no distinction between the individual capacity claim against Bezotte and the claim against the County, the latter of which would include liability for Bezotte's alleged deliberate indifference in his official capacity as a policymaker. The court denied Bezotte qualified immunity on the same basis that it denied summary judgment to the County—because there were questions of fact as to whether Bezotte acted with deliberate indifference.

---

[3]Randy Boos did not seek summary judgment on the claims against him and is not a party to this appeal.

[4]Plaintiffs have not cross-appealed the district court's grant of qualified immunity to Cremonte, and thus, he is not a party to this appeal.

Defendants timely appealed to this Court on October 4, 2011. Several motions by each party followed the appeal, reflecting the parties' belief that a decision on the interlocutory appeal of the qualified-immunity inquiry would necessarily resolve the denial of the County's separate motion for summary judgment. Plaintiffs first moved to dismiss the appeal for lack of jurisdiction as to both Defendants. A panel of this Court denied the motion because disputed facts are to be construed in the plaintiff's favor in connection with a request for qualified immunity, *see Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998); the panel also found that pendent appellate jurisdiction may apply with respect to the County's appeal, though it did not decide whether Defendants' claims were inextricably intertwined for purposes of invoking pendent appellate jurisdiction at that time, *see Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995).

Plaintiffs then moved to enlarge the record and sought, in the alternative, to remand the case to the district court to introduce new evidence to bolster their claims against the County. This motion was denied inasmuch as it was contrary to case law. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"); *United States v. Smith*, 344 F.3d 479, 486 (6th Cir. 2003) (noting that we do not review new evidence not considered by the district court). We then granted Defendants' emergency motion to stay the district court proceedings pending the interlocutory appeal of the qualified-immunity issue and denied Plaintiffs' motion to reconsider that stay.

We now consider whether Bezotte is entitled to qualified immunity and whether we will exercise pendent appellate jurisdiction over the County's claim.

## DISCUSSION

**A.     Individual Capacity versus Official Capacity Claims**

As an initial matter, it seems that this area of the law has confused the parties involved in this case. In the instant case, the § 1983 claim against Bezotte is asserted against him in his individual capacity. An individual-capacity claim is distinct from a claim against a defendant in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). The former claim may attach personal liability to the government official, whereas the latter may attach liability only to the governmental entity. *See id.* at 166–67. In other words, an official-capacity claim is merely another name for a claim against the municipality. *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) ("In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent."). Claims asserted against the municipality are not entitled to the qualified-immunity defense and, thus, such claims cannot be resolved on interlocutory appeal unless they are necessarily resolved by our qualified-immunity determination on the individual-capacity claims. *See Brennan v. Twp. of Northville*, 78 F.3d 1152, 1157–58 (6th Cir. 1996); *cf. Myers v. Potter*, 422 F.3d 347, 358 (6th Cir. 2005) (reversing a district court that prematurely granted summary judgment to defendant in his official capacity on a failure-to-train claim, finding that the plaintiff should have been granted more time to conduct discovery).

In a case such as this, where the supervisor is also the policymaker, an individual-capacity claim may appear indistinguishable from an official-capacity or municipal claim, but these failure-to-train claims turn on two different legal principles. For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have "'encouraged the specific incident

of misconduct or in some other way directly participated in it.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A plaintiff must demonstrate that the defendant supervisor "'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (quoting *Sheehee*, 199 F.3d at 300). A mere failure to act will not suffice to establish supervisory liability. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

At oral argument, Plaintiffs argued that this Court's opinions in *Taylor v. Michigan Department of Corrections*, 69 F.3d 76 (6th Cir. 1995), and *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992), dictate otherwise; but they are incorrect. In both *Taylor* and *Hill*, it was the defendant supervisors' active engagement in a function of their position that directly resulted in injury to the plaintiffs. In *Hill*, the defendant supervisor referred inmate complaints that he received personally to the nursing staff that he knew was wrongly altering and destroying inmate prescriptions. *Hill*, 962 F.2d at 1213. In *Taylor*, it was the defendant's actual performance of his job function (approving inmate transfers despite knowing that inmate files were not reviewed prior to transfers) that resulted in a direct injury to the plaintiff. *Taylor*, 69 F.3d at 80. This sort of "direct participation" or, at the very least, active acquiescence in the known misconduct are likely examples of the outer bounds of the "active performance" necessary for a supervisory liability claim. *See Gregory*, 444 F.3d at 752. "[L]iability must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Id.* at 751. There must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury. *See id*. at 752.

Contrast a failure-to-train or supervise claim against a municipality; this is a broader claim concerning the custom or policy of a municipality, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978), and thus would implicate the conduct of a defendant supervisor insofar as he acted with deliberate indifference in his official capacity as a policymaker. *See Phillips*, 534 F.3d at 543; *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012). Such claims do not require direct participation in or encouragement of the specific acts; rather, these claims may be premised on a failure to act. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). A plaintiff must establish that the municipality, through its policymakers, failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees, *see Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407–08 (1997); or 2) the fact that the constitutional violation alleged was a patently obvious and "highly predictable consequence" of inadequate training, *id.* at 409 (discussing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

We highlight this crucial distinction between individual-capacity and official-capacity failure-to-train-or-supervise claims because, in the instant case, whether sexual assault was an obvious consequence of inadequate training or whether a pattern of sexual misconduct in other counties sufficed for proving actual or constructive knowledge speaks to the County's liability for Bezotte's conduct in his official capacity. These questions do not bear on the qualified-immunity inquiry of whether Bezotte exhibited the much higher culpability standard of personal involvement. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (noting that the grant of qualified immunity

was proper where there was no evidence of personal involvement, but the official-capacity claims were separate actions against the County analyzed under a deliberate-indifference inquiry).

Having discussed the two types of failure-to-train-or-supervise claims before us, we now turn to the issues of qualified immunity and pendent appellate jurisdiction.

## B.    Qualified Immunity

### 1.    Standard of Review

When considering an appeal from a denial of qualified immunity, this Court reviews *de novo* "'abstract or pure legal issue[s] of whether the facts alleged by the plaintiff constitute a violation of clearly established law.'" *Gregory*, 444 F.3d at 742 (quoting *Berryman*, 150 F.3d at 563). The district court's finding that an issue of fact is genuine is not reviewable on interlocutory appeal, *id.*, and defendants must concede the most favorable view of the facts to the plaintiff for purposes of the appeal, *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009). However, even where a district court's denial of summary judgment may appear to be based on factual issues, we may nonetheless review that court's determination if it "hinges on legal errors as to whether the factual disputes (a) are genuine and (b) concern material facts." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009) (emphasis omitted).

### 2.    Analysis

In the instant case, the genuine issues of material facts found by the district court—whether sexual assault was an obvious consequence of inadequate training and/or supervision and whether a pattern of behavior in other jurisdictions constitutes knowledge of a risk—have no bearing on whether Bezotte was entitled to qualified immunity. As discussed above, such facts concern a

deliberate-indifference inquiry in analyzing the claim against the County. Because the facts as alleged by Plaintiffs do not establish a constitutional violation by Bezotte in his individual capacity, we find that he is entitled to qualified immunity.

Public officials who violate a plaintiff's constitutional rights while acting under the color of law may be liable under 42 U.S.C. § 1983. *Graham*, 473 U.S. at 166. However, the qualified-immunity defense bars individual liability where "a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights." *Gregory*, 444 F.3d at 738. Qualified immunity "'gives ample room for mistaken judgments,'" protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell*, 585 F.3d at 907 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Plaintiffs bear the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation. *See id*.

Although the sexual assaults on Plaintiffs are clearly established violations of their constitutional rights, Plaintiffs fail to assert any facts that Bezotte's personal actions violated those rights. For Bezotte to be individually liable for failing to train or supervise, Plaintiffs needed to demonstrate that he took deliberate action or was otherwise involved in Boos' illegal acts. *See Gregory*, 444 F.3d at 751; *cf. Hill*, 962 F.2d at 1213. Plaintiffs allege only that Bezotte inadequately trained road patrol deputies and failed to supervise Boos despite knowing that sexual assaults on inmates were occurring in other jurisdictions. This hardly counts as encouragement of the specific incident or knowing acquiescence in Boos' conduct. Indeed, it is an allegation of only a failure to act, which alone is insufficient to support a supervisory-liability claim. *See Gregory*, 444 F.3d at

10

751. Plaintiffs were required to point to some actual conduct by Bezotte that directly contributed to their injury; we have no such showing here.

We therefore find that the district court erred in denying Bezotte's motion for summary judgment. "[W]hereas the County's liability may be premised on its policymaker's deliberate indifference," the individual defendant may be liable only upon a showing of personal involvement. *Harvey v. Campbell, Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011). The question of deliberate indifference for establishing liability against the County for Bezotte's actions in his official capacity as policymaker is a separate inquiry. *See Phillips*, 534 F.3d at 543–44 (citing *Canton*, 489 U.S. at 385); *see also Cady*, 574 F.3d at 342. There are simply no facts in the record to support a finding of supervisory liability with respect to Bezotte.

## C. Pendent Appellate Jurisdiction

Defendants also ask this Court to review the district court's denial of their motion for summary judgment on Plaintiffs' § 1983 claim against the County. However, unlike Bezotte, the County is not entitled to an interlocutory appeal from the district court's denial of summary judgment as to it unless the issues raised in the County's appeal are "inextricably intertwined with" or "necessary to ensure meaningful review of" the qualified immunity inquiry. *See Swint*, 514 U.S. at 50–51; *see also Brennan*, 78 F.3d at 1157–58. Despite our determination on qualified immunity, the question of whether Bezotte was deliberately indifferent in implementing policies pertaining to deputy training and supervision is not necessarily resolved; consequently, the issue of the County's potential liability is unresolved at this early stage of the litigation. It is still plausible that Bezotte could have known of a pattern of misconduct or could have anticipated Boos' conduct as a result of

Bezotte's failure to provide specific training on sexual assault.  Accordingly, we lack jurisdiction over the County's appeal.

**CONCLUSION**

For the reasons stated above, we **REVERSE** in part the district court's order and **REMAND** with instructions that the district court enter an order granting Bezotte qualified immunity and dismissing the case against him in his individual capacity.  We **DISMISS** the County's appeal for lack of jurisdiction.