RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0350P (6th Cir.)
File Name: 03a0350p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALFRED R. SCICLUNA,
    *Plaintiff-Appellee,*

*v.*

No. 02-2117

HARRY G. WELLS et al.,
    *Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-70376—Avern Cohn, Senior District Judge.

Argued: September 12, 2003

Decided and Filed: October 2, 2003

Before: MERRITT, MOORE, and GILMAN, Circuit
Judges.

---

## COUNSEL

**ARGUED:** John L. Thurber, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Nedra D. Campbell, LAW OFFICE OF NEDRA D. CAMPBELL, Southfield, Michigan, for Appellee. **ON BRIEF:** John L. Thurber, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Nedra D. Campbell,

LAW OFFICE OF NEDRA D. CAMPBELL, Southfield, Michigan, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. Alfred Scicluna, a Michigan prisoner, brought suit against two physicians and a corrections officer for the alleged violation of his rights under the Eighth Amendment to the United States Constitution. Dr. Paul Harvey, Dr. Richard Huff, and Corrections Officer Felix Carrizales filed separate motions for summary judgment based upon the doctrine of qualified immunity. The defendants now appeal the district court's denial of their motions, arguing that the record provides no basis for Scicluna's allegations that they were deliberately indifferent to his serious medical and security needs. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I. BACKGROUND

#### A. Factual background

Scicluna suffered a fractured skull as the result of an unprovoked attack on April 20, 1992 that was orchestrated by Eugene O'Sullivan, Scicluna's codefendant in the criminal trial that resulted in their imprisonment. At the time of the attack, Scicluna and O'Sullivan were both inmates at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. Scicluna contends that Carrizales, his Resident Unit Manager and counselor at MCF, demonstrated deliberate indifference by taking no action to transfer either Scicluna or O'Sullivan to a different facility, even though Carrizales had been told by Scicluna that the two inmates had a hostile relationship and that keeping them together at MCF was in violation of Michigan Department of Corrections (MDOC)

regulations concerning "known conflict situations." Carrizales, on the other hand, argues that he was unaware of any conflict between Scicluna and O'Sullivan and therefore could not have demonstrated deliberate indifference to the safety of Scicluna by failing to address the conflict situation.

Following the attack, Scicluna was brought to a community hospital in Muskegon for emergency neurosurgery. He was treated by a civilian physician, who removed a portion of his skull and recommended continued treatment, including a crainioplasty to replace the removed portion. Rather than authorize further surgery, Huff, MCF's Medical Director, recalled Scicluna from the community hospital. Huff examined Scicluna on April 27, 1992, after which Huff prescribed the anti-seizure drug Dilantin. Following a second examination on May 5, 1992, Huff transferred Scicluna to Kinross Correctional Facility (KCF) in Kincheole, Michigan for a neurosurgical consultation. Because KCF did not have the facilities needed to treat Scicluna, he was transferred to the G. Robert Cotton Correction Facility (JCF) in Jackson, Michigan on the following day. Scicluna contends that Huff demonstrated deliberate indifference to his serious medical needs by transferring him to a facility that Huff knew was not equipped to treat him. In response, Huff argues that he believed that KCF was equipped to treat Scicluna and that none of his actions constituted deliberate indifference.

Scicluna arrived at JCF on May 6, 1992, with paperwork calling for an immediate neursurgical consultation. But he was not examined by Harvey until May 26, 1992. Harvey, after determining that Scicluna's level of Dilantin was toxic and that his skull was recently fractured, lowered his Dilantin levels and arranged to have Scicluna transferred to the Earnest C. Brooks Correctional Facility (LRF) in Muskegon, Michigan for a neurosurgical consultation. Scicluna arrived at LRF, which is in the same complex as MCF, on August 5, 1992, and was again placed under the care of Huff.

Scicluna argues that Harvey demonstrated deliberate indifference to his serious medical needs by failing to examine him until 20 days after he arrived at JCF, despite papers calling for an "immediate neuro consult." Harvey contends that the record provides no basis for finding deliberate indifference on his part because Scicluana offered no evidence that Harvey even knew that Scicluna was at JCF prior to May 26, 1992.

## B. Procedural background

Scicluna filed suit pursuant to 42 U.S.C. § 1983, "which provides for a private right of action against any person who, under color of state law, violates another person's federal rights." *Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir. 1992). Harvey, Huff, and Carrizales filed separate motions for summary judgment based upon the doctrine of qualified immunity. The district court denied the motions on the basis that Scicluna has raised genuine issues of material fact that could not be resolved on summary judgment. This timely appeal followed.

## II. ANALYSIS

## A. Standard of review

This court reviews the denial of qualified immunity in an action brought under 42 U.S.C. § 1983 de novo. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). "[F]or an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999). We will therefore accept Scicluna's allegations as true for purposes of this interlocutory appeal and view all facts and reasonable inferences in the light most favorable to him.

## B. Doctrine of qualified immunity

The doctrine of qualified immunity shields from liability for civil damages those officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We evaluate a defendant's claim of qualified immunity by determining whether (1) a constitutional violation occurred, (2) the right violated was clearly established, and (3) "the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).

Scicluna contends that the defendants violated a clearly established constitutional right when they showed deliberate indifference to his serious medical and safety needs. Such conduct is prohibited by the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To show that he was subjected to such deliberate indifference, Scicluna need not prove that the defendants had the "express intent to inflict unnecessary pain," but only that their conduct demonstrated a level of "obduracy and wantonness" greater than simple "inadvertence or error in good faith . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

## C. Carrizales's motion

Scicluna testified in his deposition that he told Carrizales of the conflict situation with O'Sullivan and of the relevant MDOC regulations. Carrizales, however, claims that the record fails to support a finding of deliberate indifference because there is no documentary evidence supporting Scicluna's deposition testimony. But documentary evidence is not essential to overcome a motion for summary judgment. Other sources of evidence, such as deposition testimony, may

suffice. *See* Fed. R. Civ. P. 56(C) (stating that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" are considered in determining whether there is a genuine issue as to any material fact). Viewing the evidence in the light most favorable to Scicluna establishes that Carrizales was told that O'Sullivan presented a serious threat to the safety of Scicluna, and that, in knowing disregard of MDOC regulations, Carrizales took no action to segregate the two inmates even though he was conscious of the risk that his failure to act imposed upon Scicluna.

Carrizales argues, alternatively, that no reasonable government official in 1992 could have known that failure to follow up on general information pertaining to an inmate-housing conflict situation would expose the official to liability. But Carrizales, according to Scicluna, had before him far more than general information concerning the conflict. Both Scicluna and his sister had allegedly informed Carrizales that O'Sullivan posed a specific threat to Scicluna. In addition, MDOC had issued directives requiring the segregation of former codefendants, such as Scicluna and O'Sullivan, because of the risk of assault, and had warned officials that they could be found personally liable for not following MDOC policy. Scicluna, consequently, "was a member of an identifiable group of prisoners for whom risk of assault was a serious problem . . . ." *Marsh v. Arn*, 937 F.2d 1056, 1062 (6th Cir. 1991) (contrasting the plaintiff in *Marsh*, who was not a member of an identifiable risk group, with the plaintiff in *Walsh v. Mellas*, 837 F.2d 789 (7th Cir. 1988), who was a member of such an identifiable group).

"If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19. A constitutional right is clearly established where "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In light of these legal

principles and the facts as asserted by Scicluna, the district court did not err in denying Carrizales's motion for summary judgment on qualified immunity grounds.

**D.  Huff's motion**

Huff argues in his brief that he believed that Scicluna would receive all necessary medical treatment at KCF when he transferred Scicluna there in May of 1992.  But he offered no affidavit in support of this assertion.  Scicluna, on the other hand, testified under oath that Huff knew that KCF officials would be unable to treat his condition.  Viewing all reasonable inferences in the light most favorable to Scicluna as the nonmovant, a genuine issue of material fact exists as to whether Huff knew that he was transferring Scicluna to a facility that was unable to treat his injury.

Huff argues, alternatively, that even if his decision to transfer Scicluna to KCF constituted deliberate indifference, the constitutional right violated was not clearly established by 1992.  But "a right can be clearly established even if there is no case involving 'fundamentally similar' or 'materially similar' facts" if the premise of a prior case alerts officials to the "clear applicability" of the legal principle to "a subsequent set of facts."  *Feathers v. Aey*, 319 F.3d 843, 850 (6th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 743 (2002)).  Deliberate indifference to a prisoner's serious medical condition was known to be a violation of the Eighth Amendment's right to be free from cruel and unusual punishment long before 1992.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that "deliberate indifference to serious medical needs of prisoners" is "proscribed by the Eighth Amendment").  Transferring a prisoner in need of urgent medical attention to a facility that the official knows is unable to provide the required treatment is conduct that would alert a reasonable person to the likelihood of personal liability.  *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972) ("[W]here the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.").  Based upon the present record, the district court did not err in denying Huff's motion for summary judgment on qualified immunity grounds.

**E.  Harvey's motion**

Harvey claims that the record does not support a finding of his deliberate indifference because there is no evidence that he was even aware that Scicluna was at JCF between May 6 and May 26 of 1992.  In the absence of an explanation for the delay, however, a reasonable inference arises that Harvey purposefully ignored the emergency-treatment report specifying that Scicluna required an "immediate neuro consult."  Viewing the facts and drawing all reasonable inferences in the light most favorable to Scicluna, a genuine issue of material fact exists as to whether Harvey's three-week delay constituted deliberate indifference.

Harvey argues, alternatively, that even if his failure to treat Scicluna at JCF constituted deliberate indifference, the constitutional right violated was not clearly established by 1992.  Before 1992, however, the Supreme Court had established in *Estelle* that deliberate indifference to a prisoner's serious medical condition constitutes a violation of the Eighth Amendment. 429 U.S. at 104.  Knowingly waiting three weeks to examine a prisoner referred to one's care for urgent attention is conduct that a reasonable prison official in 1992 should have known would subject him to personal liability.  Based upon the present record, the district court did not err in denying Harvey's motion for summary judgment on qualified immunity grounds.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court that denied the defendants' motions for summary judgment.