NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1265n.06

No. 11-2535

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

VONLEE NICOLE TITLOW,

    Plaintiff-Appellee,

v.

CORRECTIONAL MEDICAL SERVICES,
INCORPORATED,*

    Defendant,

GREGORY NAYLOR, Doctor; CRAIG
WITHROW; Dr. HARESH PANDYA; Dr.
JEFFERY STIEVE,

    Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

FILED
DEC 7, 2012
LEONARD GREEN, Clerk

Before: COOK and WHITE, Circuit Judges; SHARP, District Judge.**

COOK, Circuit Judge. Defendants-Appellants Dr. Gregory Naylor, Dr. Haresh Pandya, and

Dr. Jeffery Stieve, doctors in the Michigan Department of Corrections ("MDOC"), and correctional

officer Craig Withrow appeal the district court's denial of their motion for summary judgment

seeking qualified immunity. Plaintiff-Appellee Vonlee Titlow, an MDOC prisoner, sued the

---

*The district court granted summary judgment to Correctional Medical Services, Inc. and it is not a party to this appeal.

**The Honorable Kevin H. Sharp, United States District Judge for the Middle District of Tennessee, sitting by designation.

defendants under 42 U.S.C. § 1983, alleging that their deliberate indifference to her serious medical needs violated her Eighth-Amendment rights. For the following reasons, we AFFIRM in part and REVERSE in part the district court's decision.

I.

Though born male, Titlow suffers from Gender Identity Disorder and considers herself female. Before incarceration in the MDOC, Titlow received silicon injections to increase her breast size. These injections caused recurring, severe pain in Titlow's breasts during her incarceration. Though several physicians recommended that Titlow receive a surgical consultation, MDOC officials twice denied the consultation before acquiescing in 2009. In 2006, an MDOC correctional officer allegedly denied her access to medical treatment. Titlow claims that these denials amounted to deliberate indifference to her serious medical need. In May 2007, Titlow brought this lawsuit seeking declaratory, injunctive, and monetary relief.

A. The Medical-Claims Review Process

In the MDOC, prison doctors provide all necessary medical care within their level of expertise, and request authorization for additional care from MDOC's network provider when a prisoner needs care beyond a prison doctor's expertise. If the network provider, Correctional Medical Services ("CMS"), denies the doctor's request, then the doctor may appeal to CMS's Medical Director for Utilization. If the Director for Utilization rejects this initial appeal, the doctor

may pursue a second-step appeal to the MDOC's Medical Services Advisory Committee (the "Committee"), a panel of physicians and healthcare personnel that oversees the authorization of medical procedures for prison inmates. The prisoner's doctor shoulders the burden to initiate appeals.

After a doctor files this second-step appeal, an MDOC Regional Medical Director forwards the prisoner's complete medical file to the Committee. The Committee discusses each pending appeal at its monthly meetings and attempts to reach a consensus on whether to approve the requested treatment. Absent consensus, the Committee's Chief Medical Officer decides whether to grant the request. The Committee then explains its decision to the appealing physician in a memorandum, allowing resubmission of the request should the circumstances change.

B.  Titlow's Treatment History & Drs. Naylor, Pandya, and Stieve

The Committee considered Titlow's request for surgery three times. It denied her appeal on January 25, 2005 and November 18, 2008, but ultimately granted her request on May 26, 2009. Defendants-Appellants Drs. Naylor, Pandya, and Stieve, three MDOC doctors, served on the Committee at different times during Titlow's second-stage appeals. Below, we recount the events leading to each Committee decision.

In December 2004, Titlow reported breast pain to Dr. Keith Camaan, who located hard tissue, edema, and scarring; prompting him to request a surgical consultation. CMS administrator Dr.

James Forshee denied the consultation because he considered the procedure cosmetic. Dr. Camaan then initiated a second-step appeal to the Committee. On January 25, 2005, the Committee upheld the denial and recommended in its memo to Dr. Camaan that Titlow stop taking Premarin, a female hormone known to cause breast tenderness. Dr. Naylor, then the Chief Medical Officer, sat on the Committee for Titlow's January 25, 2005 denial.

Thereafter, Titlow's severe breast pain persisted, causing her to seek repeated treatments. Over the next three years, six physicians, one psychiatrist, and a physician's assistant treated Titlow for breast pain. These professionals made at least four requests to CMS for a surgical consultation on Titlow's behalf, but a CMS official denied each request. Despite these repeated first-stage denials, no doctor pursued a second-step appeal to the Committee until 2008. Titlow filed this § 1983 claim in May 2007.

In January 2008, Dr. Robert Crompton examined Titlow and informed her that he would appeal her case to the Committee. Ten months later, on November 18, 2008, it denied Titlow's request for "general surgery." Dr. Stieve, as Acting Chief Medical Officer, participated in this denial. Unlike the January 2005 denial, the November 18, 2008 memo included no explanation or alternative treatment suggestions.

Several months later, Titlow received treatment for pain and bloody discharge from her right breast. Days later, Titlow's retained expert for her lawsuit, Michael Busito, prepared a report from his review of Titlow's medical records. He concluded that Titlow needed a surgical consultation and

bilateral mastectomies, which the Committee approved upon reviewing Titlow's appeal on May 26, 2009. Dr. Stieve (Chief Medical Officer) and Dr. Pandya (MDOC Region II Medical Officer) participated in this approval. The Committee further commented, "DR. H. PANDYA TO DOCUMENT APPROVAL AND STRESS NON APPROVAL OF ELECTIVE PLASTIC RECONSTRUCTION." (*See* May 26, 2009 MSAC Approval.) After Titlow underwent successful surgery, her medical condition "improved tremendously." (Pl.'s Mot. Summ. J. at 24, ID #1831.)

C. Titlow's April 14, 2006 Interaction with Officer Withrow

During Titlow's incarceration, Officer Craig Withrow worked as an MDOC correctional officer at Titlow's facility. On April 14, 2006, at approximately 4:00 a.m., Titlow requested that Withrow call the prison hospital because she suffered a great deal of pain in her head and breast. Withrow "snickered" and "responded in a mocking tone, that he would try to call, but doubted [the hospital] would see [Titlow]." (Titlow Aff. at 1 ¶ 4, ID #1993.) Withrow failed to seek any medical care for Titlow, neglected to record her condition in the guards' log book, and did not return to check on her. Titlow alleges this was "not the first time that Withrow [was] aware of [Titlow's] pain." (*Id.* at 1 ¶ 5, ID #1993.) Titlow received medical attention only after Withrow's shift ended.

Titlow filed a grievance against Withrow. The prison warden, S. L. Burt, issued a written response to her complaint. Burt wrote that "[w]hile it appears [Officer Withrow] had a reasonable expectation that the nurse would be is [sic] the unit in a short period following your request; based on the language in [the applicable policy], Health Care should have been called and allowed to make

a determination on whether you should be seen." (Grievance Resp. at 2, ID #2023.) Burt would

ensure that "all staff are aware of the provision in [MDOC] policy to call medical staff," and address

the staff involved. (*Id.*) Withrow disputes Titlow's account, claiming that she "never complained

of chest pains." (Withrow Dep. at 46:6–15, ID #2037.)

D. District Court Findings

Titlow claims that Withrow's failure to assist her and the Committee's denials of surgery

constituted deliberate indifference to her serious medical need in violation of the Eighth

Amendment's prohibition of cruel and unusual punishment. At the district court, Defendants-

Appellants' motion for summary judgment included four non-parties to this appeal: CMS, Craig

Hutchison (CMS's Medical Director), Keith Ivens (CMS's Director for Utilization), and Crystal Rice

(another MDOC correctional officer). The district court granted qualified immunity to CMS and

Hutchison. It denied qualified immunity to the four Defendants-Appellants, Rice, and Ivens. (Op.

& Order at 1, 25, ID #2211, 2235.) We dismissed with prejudice Titlow's claim against Rice after

Rice received a discharge under 11 U.S.C. § 727. Ivens did not appeal.

The district court found that Titlow suffered from a serious medical need and that she raised

"a genuine issue of material fact with respect to whether Defendants, *in the aggregate*, reached a

contrary administrative as opposed to medical conclusion based on [Titlow's] unique condition."

(Op. & Order at 17, #2227 (emphasis added).) The district court arrived at this conclusion by

considering all the defendant doctors' actions together—despite their different roles in Titlow's

medical care: Naylor, Stieve, and Pandya's involvement occurred during three Committee meetings, whereas Ivens, CMS, and Hutchison influenced Titlow's first-stage appeals.

Next, the court considered the individual liability of each defendant. It found that "defendants Stieve, Pandya, and Naylor were each involved in the subsequent [Committee] process which repeatedly denied the requests of [Titlow's] physicians . . . despite a medical record which provided objective indications of [Titlow's] condition." (*Id.* at 21, ID #2231.) It found that Titlow "raise[d] a genuine issue of material fact with respect to whether those denials amounted to deliberate indifference." (*Id.* at 22, ID #2232.) The court then denied qualified immunity to Ivens, Stieve, Pandya, and Naylor because they "were directly involved in those denials." (*Id.*)

As for Officer Withrow, the court found that Titlow "presented sufficient evidence to raise a genuine issue of material fact" because "the allegations, if true, are sufficient to demonstrate deliberate indifference." (*Id.* at 24.)

II.

A. Standard of Review & Jurisdiction

We review de novo the denial of qualified immunity in an action brought under 42 U.S.C. § 1983. *See Scicluna v. Wells*, 345 F.3d 441, 444 (6th Cir. 2003). "[F]or an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *Id.* (quoting *Shehee v.*

*Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999)). Thus, we accept all of Titlow's allegations as true and view all facts and reasonable inferences in the light most favorable to her. *Id.* at 444–45.

B. Analysis

Plaintiffs may seek money damages from government officials who have violated their constitutional rights. But the officials may claim qualified immunity "so long as they have not violated a clearly established right." *Camreta v. Greene*, 131 S. Ct. 2020, 2030–31 (2011) (internal quotation marks omitted). Plaintiffs carry the burden of proving that the state officials are not entitled to qualified immunity. *See Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). To defeat qualified immunity, Titlow must satisfy a two-step inquiry: First, viewing the facts in the light most favorable to Titlow, has she shown that a constitutional violation occurred? Second, was the right clearly established at the time of the violation? *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 538–39 (6th Cir. 2008); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

1. Deliberate Indifference

To prevail on her deliberate-indifference claim, Titlow first must show that she suffered from a "sufficiently serious" medical need, which Defendants-Appellants concede. (Appellant Br. at 24–25) Next, she must allege facts which, if true, would show that each official (1) subjectively perceived facts from which to infer substantial risk to her, (2) inferred the risk, and then (3) consciously disregarded the risk. *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)

(citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Each defendant's conduct must evidence "deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)).

Though "'federal courts are generally reluctant to second guess medical judgments' . . . it is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Because officials "do not readily admit this subjective component . . . it is permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge." *Phillips*, 534 F.3d at 540 (internal quotation marks and punctuation omitted). We must evaluate the liability of each defendant individually. *See, e.g.*, *id.*, at 542 ("Where . . . the district court is faced with multiple defendants asserting qualified immunity defenses, the court should consider whether each individual defendant had a sufficiently culpable state of mind."); *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005) ("[The] subjective component must be addressed for each officer individually.").

Titlow's appeal came before the Committee only three times. Because it granted her surgery request at its May 26, 2009 meeting, we find that authorizing her requested treatment does not evince a "deliberateness tantamount to an intent to punish." *See Hicks*, 992 F.2d at 1455. We narrow our focus to the Committee's January 25, 2005 and November 18, 2008 denials to determine whether, viewing all inferences in Titlow's favor, Drs. Naylor, Pandya, or Stieve individually acted with

deliberate indifference toward her serious medical need. We then analyze Officer Withrow's refusal to call for medical care on April 14, 2006.

a. Dr. Pandya

Dr. Pandya's involvement in authorizing Titlow's treatment occurred on May 26, 2009, when he served on the Committee that granted Titlow's request. Granting Titlow's request for surgery lacks the "deliberateness tantamount to an intent to punish," and qualified immunity therefore shields Pandya from liability. Titlow gleans deliberate indifference from Pandya's confusion during his deposition about when the MDOC first offered Titlow surgery. Despite any knowledge Dr. Pandya may have had of Titlow and her medical issues, he lacked authority as Regional Medical Officer to authorize or deny Titlow's requested consultations. According to the MDOC Review and Appeals Process for Offsite Health Services, Regional Medical Officers' involvement in the treatment-approval process occurs after a doctor initiates a second-step appeal to the Committee. The Regional Medical Officer then "assur[es] that all needed documentation and information . . . is present." (MDOC Offsite Health Services Operating Procedure at 4 ¶ 21, ID #1887.) If incomplete, the Regional Medical Officer "obtains the needed information" (*id.*) and "[f]orwards the case with all supporting documentation to the Chief Medical Officer's . . . secretary," (*Id.* ¶ 22, ID #1887). Titlow provides no evidence that Pandya, as Regional Medical Officer apart from his Committee service, acted with deliberate indifference toward Titlow by failing to provide all documentation. Qualified immunity therefore shields Pandya from liability.

b. Dr. Naylor

Dr. Naylor's involvement in Titlow's treatment approval came during the Committee's January 25, 2005 denial. The district court found that "[a]t the time of the 2005 denial it cannot be said that the MSAC's failure to approve a surgical consultation amounted to deliberate indifference," because "it was plausible for the MSAC to conclude that conservative treatment options should first be explored or that more information was necessary to make an informed decision." (Op. & Order at 19, ID #2229) We agree. The Committee denied the surgical consultation, but then provided a specific alternative treatment plan when it recommended "stopping Premarin." (Jan. 25, 2005 MSAC Denial, ID #2089.) The district court correctly concluded that by proposing an alternative treatment plan on January 25, 2005, the Committee lacked "deliberateness tantamount to an intent to punish." Naylor only participated in this meeting, and qualified immunity therefore shields him.

c. Dr. Stieve

Dr. Stieve served as the Chief Medical Officer during the Committee's November 18, 2008 denial. Citing Titlow's repeated and continual complaints of severe breast pain and her treating physicians' recommendations, the district court found that Titlow raised sufficient evidence to withstand summary judgment "with respect to whether Defendants, *in the aggregate*, reached a contrary administrative as opposed to medical conclusion based on [Titlow's] unique condition." (Op. & Order at 17, ID #2227 (emphasis added).) But in deliberate-indifference cases, "the subjective component must be addressed . . . individually." *Garretson*, 407 F.3d at 797. We find

it problematic that the district court used the aggregate involvement of Ivens, Naylor, Pandya, and Stieve in "repeated[] deni[als]" (Op. & Order at 21, ID #2231) to find a genuine issue of material fact without individually evaluating each defendant's knowledge. Because the court failed to determine whether the facts, viewed in Titlow's favor, could demonstrate Stieve's individual culpability when it denied Titlow's November 18, 2008 appeal, we do so now.

Stieve argues that he did not exhibit deliberate indifference because "[s]tate doctors on the [Committee] responded to Plaintiff's needs in a professionally responsible manner with alternative, but more conservative, treatment plans," and mere differences in doctors' opinions cannot support a deliberate-indifference claim. (Appellant Br. at 26.) Yet, "it is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all.'" *Alspaugh* 643 F.3d at 169 (quoting *Westlake*, 537 F.2d at 860 n.5). To defeat qualified immunity, Titlow must raise a genuine issue of material fact as to whether Stieve (1) subjectively perceived facts from which he could infer substantial risk to Titlow, (2) inferred the risk, and then (3) consciously disregarded it. *See Comstock* , 273 F.3d at 703. We find that Titlow did.

Before Titlow's November 18, 2008 denial, Stieve knew of Titlow's medical issues. (Stieve Dep. at 61:5–14, ID #1948.) Stieve also admitted that the medical needs of prisoners with Gender Identity Disorder "are not to be taken lightly." (*Id.* at 23:1–2, ID #1939.) These statements raise a genuine issue of material fact on the first two elements: whether Stieve subjectively perceived substantial risk to Titlow and inferred the risk. Further, whether Stieve consciously disregarded that

risk also constitutes an unresolved material fact. Although it played no role in the first-level appeals to CMS, the Committee had access to "all supporting documentation" concerning these appeals. (MDOC Offsite Health Services Operating Procedure at 3 ¶ 22, ID #1887.) By November 2008, Titlow's treatment history consisted of numerous first-stage appeals and denials, and the Committee's own January 2005 denial. The return of the same appeal after nearly four years also suggests that more conservative treatment options failed. What is more, the 2008 appeal included at least three additional years of treatment records than existed at the 2005 denial stage.

Despite the richer medical record, the November 18, 2008 Committee denied Titlow's claim without explanation or comment. This absence contrasts the January 25, 2005 Committee denial that suggested a reasonable, more conservative treatment plan (eliminating Premarin), and the May 26, 2009 approval that reflected the Committee's deliberation by expressing the non-approval of plastic reconstruction. On these facts, a jury could find that Stieve acted with "deliberateness tantamount to an intent to punish" by denying the surgical consultation on November 18, 2008. As such, Titlow carries her burden regarding qualified immunity's deliberate-indifference prong.

### d. Officer Craig Withrow

Titlow alleges that Officer Withrow's failure to immediately seek medical assistance on April 14, 2006 amounted to deliberate indifference. Titlow testified that she suffered unbearable pain that was obvious to Withrow. But Withrow neither sought medical attention nor documented her requests for medical care. The warden's written response to Titlow's grievance lends support to her

claim. We agree with the district court that Titlow raises a genuine issue of material fact about whether Withrow acted with deliberate indifference.

2. Violation of Clearly Established Constitutional Rights

Titlow must still demonstrate that Dr. Stieve and Officer Withrow's conduct violated a clearly established constitutional right. For a right to be "clearly established," a reasonable official must understand that the action violates the claimed right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff need not demonstrate that the "very action in question has previously been held unlawful . . . but . . . in the light of pre-existing law the unlawfulness must be apparent." *Id.* (internal citations omitted).

Defendants-Appellants argue that "disputes that lie solely within the adequacy of treatment and the course of treatment prescribed do not rise to . . . an Eighth Amendment violation." (Appellant Br. at 32.) A government doctor merits qualified immunity if "he has merely made a reasonable mistake in his medical judgment," but "he is not entitled to such immunity if he correctly perceived all the relevant facts, understood the consequences of such facts, and disregarded those consequences in his treatment of a patient." *LeMarbe v. Wisneski*, 266 F.3d 429, 440 (6th Cir. 2001). Assuming the jury accepts Titlow's facts, it could view Stieve's November 18, 2008 denial as a conscious disregard for Titlow's health in violation of her "right not to have [her] serious medical needs disregarded by [her] doctors." *See id.*

The record also reflects that Withrow, by disregarding Titlow's unmistakable pain, violated a clearly established right. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972) ("[W]here the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the denial of constitutional due process."); *see also Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 552 (6th Cir. 2009); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005).

### III.

For the foregoing reasons, we REVERSE the district court's denial of qualified immunity with respect to Drs. Pandya and Naylor. We AFFIRM the district court's denial with respect to Dr. Stieve and Officer Withrow, and REMAND for proceedings consistent with this opinion.