**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0112n.06

No. 12-5713

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 31, 2013*
DEBORAH S. HUNT, Clerk

JUDY GANTZ,                                                          )
                                                                    )
      Plaintiff-Appellee,                                     )          ON APPEAL FROM THE
                                                                    )          UNITED STATES DISTRICT
      v.                                                      )          COURT FOR THE EASTERN
                                                                    )          DISTRICT OF KENTUCKY
WAYNE COUNTY SHERIFF'S OFFICE, et al.,                              )
                                                                    )
      Defendants,                                             )
                                                                    )
and                                                                 )
                                                                    )
                                                                    )
ROBERT ELLIS, Deputy Sheriff of Wayne County,                      )
                                                                    )
      Defendant-Appellant.                                    )
                                                                    )

BEFORE:  BOGGS and WHITE, Circuit Judges, and McCALLA, District Judge.[*]

     **HELENE N. WHITE, Circuit Judge.**  Defendant-Appellant Deputy Sheriff Robert Ellis[1]

appeals the district court's denial of his motion seeking the qualified-immunity-based dismissal of

Plaintiff-Appellee Judy Gantz's claims alleging false arrest, excessive force, state and federal

malicious prosecution, and assault and battery.  Because Ellis does not concede Gantz's version of

---

     [*]The Honorable Jon Phipps McCalla, Chief United States District Judge for the Western
District of Tennessee, sitting by designation.

     [1]Defendants Sheriff Charles Boston and the Wayne County Sheriff's Office were dismissed
from this action and are not parties to this appeal.

events, as he must in this interlocutory appeal, and raises no purely legal issues, we DISMISS the appeal for lack of jurisdiction, and REMAND to the district court for continuation of the proceedings.

**I**.

On July 11, 2009, Judy Gantz ("Gantz") called the police after her ex-husband, George Young, refused to leave her house. Local police responded to Gantz's call and informed her that because Young claimed to live at her house, they could not remove him from the residence and she would have to file an eviction notice. The police left and Young remained at Gantz's house. Young stayed in a separate room for a while, but later that day broke into Gantz's garage and began driving Gantz's four-wheeler[2] up and down the street. Gantz called the police a second time and reported that Young was attempting to take her four-wheeler. Gantz went across the street to a neighbor's house to wait for the police to arrive. Sheriff's Deputy Robert Ellis ("Ellis") responded to the call at approximately 11:30 p.m. When Gantz saw Ellis pull up in front of her house, she left her neighbor's house to talk with him. At this point, the parties' accounts diverge.

**A. Facts according to Gantz**

Ellis told Gantz that he would speak with Young, who was sitting on a short wall on her property. Gantz stood across the street while Young spoke with Ellis, but when she saw Young backing her four-wheeler out of the driveway she walked across the street and confronted him by

---

[2]"Four-wheeler" is a term commonly used to refer to all-terrain recreational vehicles (also known as ATVs).

telling him in a calm voice, "George you know that's not your four-wheeler." Young did not reply

and continued backing out of Gantz's driveway. At this point, Ellis ran at her saying, "You may talk

to him that way but you're not going to talk to me that way." Ellis was red in the face, spit while he

was talking, and appeared angry. Ellis grabbed Gantz by the arms, picked her up off the ground, and

shook her. Gantz lost control of her bladder. Ellis told her that she was going to jail. Gantz asked

what she had done, but Ellis did not reply and instead slammed her against the trunk of his police

vehicle. He pushed her left arm behind her back and lifted her up one or two times before shoving

her into his car. As he shoved her in, he reached down and began unbuttoning something on his

police belt. Gantz believed Ellis was going to shoot her. She did not struggle at any time during the

incident, and Ellis never issued any orders before he grabbed her. As a result of the arrest, Gantz's

neck and ribs were injured and she suffered bruising and scratching on her arms.

During the booking process, Ellis told Gantz that she was being booked for disorderly

conduct. Gantz replied "whatever," and Ellis responded, "No it ain't whatever, now I'm going to

book you with resisting arrest too[.]" Gantz did not request to see a doctor at the jail. She was

released the following morning on her own recognizance. The county attorney dismissed all charges

against Gantz after her second court appearance.

**B. Facts according to Ellis**

Both before the district court and on appeal, Ellis disputes Gantz's version of events. Ellis

maintains that he directed Gantz to stay at her neighbor's house while he talked to Young. After

talking to Ellis, Young agreed to leave for the night. Young told Ellis that the four-wheeler belonged

to him and that he would load it into his truck. Ellis noticed that Young used two wires to start the four-wheeler instead of a key. When Young began backing up the four-wheeler, Gantz left her neighbor's house and started arguing with Young about who owned the four-wheeler. Ellis told Gantz to return to her neighbor's house, and told Young to stay at the front of Gantz's house. Gantz responded that it was her property and that she had done nothing wrong. Ellis told her that he could not have her arguing with Young, and that she needed to return to her neighbor's house. Young and Gantz continued arguing, and Ellis told Gantz again that if she did not go back to her neighbor's house, he would take her to jail. She refused and repeated that she had done nothing wrong and that it was her property. Ellis told Gantz she was under arrest and, when he grabbed her right arm, she spun away from him. He executed a "wrist technique" to bring her under control and began walking her toward his car. Gantz repeated that she had done nothing wrong, and refused to sit down in his car. Ellis used his right knee to raise her left thigh, take away her balance, and push her into the car. Gantz's feet remained outside the car, and when Ellis told her to move her feet inside, she refused. Ellis reached for his mace, began shaking it, and Gantz put her feet in the car. Ellis denies shaking Gantz or picking her up off the ground, and further denies that the county attorney ever talked to him about dismissing the charges against Gantz, claiming that he did not know what happened to the case.

## II.

Gantz filed a complaint in the United States District Court for the Eastern District of Kentucky against the Wayne County Sheriff's Office, Sheriff Charles Boston, and Deputy Sheriff

Ellis, in their official and individual capacities, asserting federal claims, under 42 U.S.C. § 1983, of false arrest, excessive force, and malicious prosecution against Boston and Ellis, and failure to train against Boston and the Wayne County Sheriff's Office, and state-law claims of intentional and/or negligent infliction of emotional distress, assault and battery, negligence and gross negligence, and malicious prosecution against Boston and Ellis. Defendants pleaded qualified immunity as an affirmative defense and moved for summary judgment.

The district court granted Boston summary judgment on qualified-immunity grounds on all claims brought against him in his individual capacity, and dismissed all federal claims against Boston and Ellis in their official capacities. The court denied Ellis summary judgment on Gantz's claims of false arrest, excessive force, malicious prosecution and assault and battery noting:

> The critical factual dispute is whether Gantz disregarded an order allegedly given by Ellis. Ellis claims his order to remain near [her neighbor]'s property was disregarded; Gantz claims no order was given before she was restrained. As a result, the Court cannot rule that probable cause was present, that force was justified, or that Ellis did not make false statements on Gantz's citation.

The court granted summary judgment to Wayne County on Gantz's federal claim of failure to train, and granted Ellis summary judgment on Gantz's state claims of intentional infliction of emotional distress, and negligence. Ellis timely filed this interlocutory appeal.

**III.**

To state a claim under § 1983, a plaintiff must set forth facts that establish the deprivation of a right guaranteed by the Constitution or laws of the United States that was caused by a person acting under the color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir.

2009). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation." *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009).

"A district court's denial of qualified immunity is a final decision for purposes of [28 U.S.C.] § 1291 only to the extent that it turns on an issue of law." *Id.* at 364. "[F]or an interlocutory appeal to be appropriate, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999). Thus, this court accepts all of Gantz's factual allegations as true for the purposes of this appeal, and views all facts and reasonable inferences in the light most favorable to her. *Scicluna v. Wells*, 345 F.3d 441, 444–45 (6th Cir. 2003). We review the denial of qualified immunity de novo. *Id.* at 444.

Although Ellis mentions Gantz's version of events, he repeatedly inserts his own version of events to support that Gantz's behavior gave him probable cause to arrest her and that the force he used was objectively reasonable.[3] Ellis repeats this interpretation of events throughout his brief.

---

[3]For example, Ellis argues:
[T]he evidence shows that [Ellis] was merely responding to a hostile situation in the middle of the night, where one officer had already been deployed to the scene earlier

(Def.'s Br. at 19, 21, 23, 25, 29–30, 36, 39.) Ellis asserts that Gantz's testimony is "both incredible and unreliable." (*Id*. at 25.)[4]

"When the legal arguments advanced rely entirely on a defendant's own disputed version of the facts, the appeal boils down to issues of fact and credibility determinations that we cannot make." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011). Ellis does not concede the facts in the light most favorable to Gantz and instead argues his interpretation of events. These arguments are not properly before this court and we lack jurisdiction to consider them. *See McKenna v. City of Royal Oak*, 469 F.3d 559, 561–62 (6th Cir. 2006).

Accordingly, we DISMISS this appeal and REMAND for continuation of the proceedings.

---

in the day. Ellis gave clear instructions to the plaintiff and advised her that if she did not cease and desist, she would be arrested. Upon being placed under arrest, the plaintiff fought and Ellis subdued her with as little force as possible.

(Def.'s Br. at 15.)

[4]Ellis's reply brief changes course and argues that even crediting Gantz's version of events, Ellis knew he was responding to a volatile situation in which Gantz claimed that Young had damaged her property and was attempting to steal her four-wheeler. (Def.'s Reply Br. at 6.) Ellis argues that Gantz never informed him that he was hurting her and that she suffered only minor bruising as a result of the incident. (*Id.* at 7.) Arguments first raised in a reply brief are not properly before this panel. *See United States v. Lopez-Medina*, 461 F.3d 724, 743 n.4 (6th Cir. 2006).