McKEAGUE, Circuit Judge,
concurring in part and dissenting in part.
I concur in the holding that defendant Officer Nick Clark is not entitled to qualified immunity in relation to plaintiffs’ § 1983 excessive force claims. See Part II.A, supra. I also concur in the holding that Officer Clark is not entitled to immunity in relation to plaintiffs’ state law claims for assault and battery. See Part II.D, supra. I disagree with the conclusion that Police Chief Jeffrey Kruithoff is not entitled to qualified immunity in relation to plaintiffs’ claim that he is individually liable for Clark’s use of excessive force on a theory of supervisory failure-to-train liability. See Part II.B, supra. I also disagree with the dismissal of the City of Springboro’s appeal. See Part II.C, supra.
I
To understand the grounds for my disagreement, it is important to recognize why, specifically, defendant Clark is exposed to individual liability for using excessive force in apprehending each of the plaintiffs. Each of the two plaintiffs sustained fairly significant leg injuries as a result of police dog “Spike’s” assistance in apprehending them after they fled from officers of the Springboro Police Department. Two features that immediately stand out are the facts that both victims were relatively innocent and harmless, and Spike’s history of service with the Springboro Police Department is marked by training and certification deficiencies. *792 Plaintiff Samuel Campbell is a young man who drew unwanted police attention when he made too much noise in the early morning hours trying to return his girlfriend’s keys after a night out at the bar. He exercised poor judgment when he decided to hide in the darkness from the investigating police officers. Chelsie Gemperline, too, was a victim of her own indiscretions. Eighteen years old, she was caught by police at an underage drinking party. When she resisted their authority, she was handcuffed and placed under arrest in a patrol car. And when she managed to slither out of the cuffs and through the window of the patrol car, she became an “escapee-fugitive,” a putative felon. In each apprehension, Spike discovered the suspect in the darkness while leashed to his handler, Officer Clark, and reacted to discovery of each suspect, not by barking, but by biting. The resultant injuries are certainly regrettable and seemingly avoidable. Yet, there is little evidence of a causal connection between Spike’s training deficiencies and plaintiffs’ injuries.
In evaluating whether the record sufficiently shows that Clark’s conduct was objectively unreasonable, thus forfeiting his entitlement to qualified immunity, it is helpful to first identify what is not at issue. First, there appears to be no dispute about the fact that Spike performed as Clark knew Spike had been trained to perform. Second, despite evidence that Spike’s certification was not always timely renewed and his biweekly training requirements were not always met, there is little indication that any such deficiencies contributed to plaintiffs’ injuries. Despite evidence that Spike should have been trained to assist as a “bark and hold” dog, rather than as a “bite and hold” dog, there is little evidence that Clark’s use of Spike in a fugitive tracking situation to help apprehend either Campbell or Gemperline was unreasonable per se under the circumstances. Nor is there evidence that Clark necessarily breached any duty by failing to give verbal warnings as he continued each search with Spike or that such failure proximately caused either suspect’s injuries.
The real question about the objective reasonableness of the force used is whether, when Spike first identified and “engaged” each suspect, Clark, who had worked with Spike for over two years and knew his training and propensities, acted unreasonably in the manner he called Spike off. And on this question, there are genuine issues of fact in relation to both plaintiffs’ claims that preclude awarding Clark summary judgment based on qualified immunity. In relation to Campbell— even accepting that the officers did not know what if any offense the suspect had committed or whether he posed a danger — there are disputes about (1) whether Clark saw Campbell before Spike did and unnecessarily allowed Spike to engage Campbell in the first place; and (2) whether Clark unreasonably delayed in calling Spike off only after he had repeatedly bitten the unarmed Campbell for 30 — 45 seconds. In relation to Gemperline, who Clark knew posed no danger, there is a dispute about whether Clark acted unreasonably in using the “choke-off’ method to call Spike off, instead of using a verbal command (as he had done with Campbell), which may have exacerbated Gemperline’s injuries.
In both cases, as the majority recognizes, Clark’s conduct, as evidenced by the record facts viewed in the light most favorable to plaintiffs, is evaluated with reference to the factors outlined in Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989): (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the *793 suspect was actively resisting arrest or attempting to evade arrest by flight. This general standard, though not susceptible of precise definition or mechanical application, was clearly established at the time of these arrests. And in relation to both plaintiffs, all three factors militate in favor of finding that once Spike discovered and engaged the suspect, minimal force was needed to subdue the suspect. In other words, the force applied by Spike should have been withdrawn as soon as reasonably possible. And in both cases, there is factual support for the proposition that Clark did not call Spike off as soon as reasonably possible or in the manner reasonably expected to minimize unnecessary injury. Viewing the record in the light most favorable to plaintiffs, Clark’s conduct was not objectively reasonable, but was marked by malice or incompetence. See Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity “ ‘gives ample room for mistaken judgments’ by protecting ‘all but the plainly incompetent or those who knowingly violate the law.’ ”)).
Clark insists that he is nonetheless entitled to qualified immunity because the unreasonableness of his use of a police dog in these circumstances had not been clearly established by the case law in a particularized sense. The district court and the majority have endeavored to compare the instant canine-attack scenarios with those deemed to have amounted to excessive force in the existing case law. Yet, every fact situation is necessarily unique and arguably distinguishable. Still, considering the apparent harmlessness of each of these plaintiffs and the seriousness of the injuries sustained, if the facts show that Clark, knowing Spike’s propensities, deliberately allowed Spike to continue his attack on Campbell or Gemperline unnecessarily, he can hardly be heard to argue that a reasonably competent officer would not have known that his conduct was unlawful.
Hence, I concur in the affirmance of the district court’s denial of qualified immunity to . defendant Clark. As I view the record, however, Clark’s exposure to suit and liability is due to evidence that he unreasonably abused his discretionary authority at the time Spike engaged each suspect, by not calling Spike off as quickly as reasonably possible. Clark’s exposure to liability is not due to his failure to ensure Spike received timely training and certification; is not due to his decision to deploy Spike in the first place during either incident; and is not due to his failure to give verbal warnings during the searches. This determination is consistent with recognition that the excessive-force assessment is based on a “segmented analysis” of the totality of the circumstances facing Clark at the time he made his split-second judgments in response to Spike’s engagement of the suspects. See Chappell v. City of Cleveland, 585 F.3d 901, 909 (6th Cir.2009). Because it is the reasonableness of each “seizure” that is the issue, not the reasonableness of Clark’s conduct in time segments leading up to the seizure, deficiencies in Spike’s training and Clark’s failure to give verbal warnings are largely beside the point. It follows that such considerations are immaterial in evaluating the excessiveness of the force employed by Clark. Yet, the majority’s reliance on these considerations served to confuse its analysis of the claims against Police Chief Jeffrey Kruithoff and the City of Springboro.
II
Neither the City nor Chief Kruithoff can be held liable for Clark’s conduct on a theory of respondeat superior. Phillips v. Roane County, Tenn., 534 F.3d 531, 543 *794 (6th Cir.2008); Miller v. Calhoun County, 408 F.3d 803, 817, n. 3 (6th Cir.2005). The City may be held liable under § 1983 if it maintained a policy or custom that caused the violation of plaintiffs’ rights. See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir.2006). “One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision.” Id. (citing City of Canton v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). The City can be held liable under plaintiffs’ failure-to-train theory if plaintiffs’ injuries can be attributed to the City’s failure to adequately train Spike and this failure amounted to “deliberate indifference” to the rights of members of the public. See City of Canton, 489 U.S. at 388, 109 S.Ct. 1197. Specifically, plaintiffs must show three elements: (1) that Spike’s training was inadequate to prepare him for the tasks he was expected to perform; (2) that the inadequacy persisted due to the City’s deliberate indifference; and (3) that the inadequacy is closely related to or actually caused plaintiffs’ injuries. Plinton v. County of Summit, 540 F.3d 459, 464 (6th Cir.2008).
In Plinton, the court identified two ways of demonstrating the second element, deliberate indifference. First, plaintiffs could show deliberate indifference through evidence of prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it. Id. (citing Fisher v. Harden, 398 F.3d 837, 849 (6th Cir.2005)). Alternatively, plaintiffs could show deliberate indifference through evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. Id. (citing Bd. of County Comm’rs of Bryan County v. Brown, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Here, plaintiffs appear to rely on the second alternative, implicitly arguing that the City failed to improve Spike’s training even though the violation of Gemperline’s rights had become foreseeable by virtue of Campbell’s experience one year earlier. However, the Campbell incident has yet to be shown to have resulted in a violation of Campbell’s constitutional rights. Until such a determination is made, the City cannot be deemed to have been placed on notice of an “obvious” need to improve training based on that single incident. Moreover, “ ‘[deliberate indifference’ is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.” Connick v. Thompson, 563 U.S. -, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (quoting Bryan County, 520 U.S. at 410, 117 S.Ct. 1382). If the need for more or different training is so obvious that the City policymaker, i.e., Chief Kruithoff, is shown to have been deliberately indifferent to the need, then the City may be deemed to have had a policy of deliberate indifference. Id.; Miller, 408 F.3d at 815—16. However, mere allegations that Spike was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference. Id. at 816.
Further, whereas the City’s liability may be premised on its policymaker’s deliberate indifference, Kruithoff cannot be held liable in his individual capacity for failing to supervise unless he “either encouraged the specific incident of misconduct or in some other way directly participated in it.” Phillips, 534 F.3d at 543 (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). To hold Kruithoff liable in his individual capacity for injuries shown to be caused by deficiencies in Spike’s training or officers’ training, plaintiffs must show *795 that Kruithoff “at least implicitly authorized, approved, or knowingly acquiesced” in the violations and injuries sustained by plaintiffs Campbell and Gemperline. Id. Plaintiffs have neither alleged nor presented any evidence to support a finding of Kruithoffs personal involvement in these incidents.
The majority purports to apply the correct legal standard to plaintiffs failure-to-train claim against Kruithoff. Further, the majority acknowledges that “Kruithoff was not actively involved in the incidents involving Spike.” It follows that Kruithoff is entitled to qualified immunity. Yet, the majority affirms the denial of qualified immunity based on evidence of Kruithoffs indifference to the need for better training of the canine unit.
This determination that Kruithoff is exposed to liability in his individual capacity for his alleged failure to adequately train or supervise the canine unit “improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.” Phillips, 534 F.3d at 543; see also Miller, 408 F.3d at 817 n. 3 (absent evidence of personal involvement in the underlying misconduct, failure-to-train claims against individual defendants are properly deemed brought against them in their official capacities, to be treated as claims against the municipality). To the extent plaintiffs have adduced evidence supporting findings that Kruithoff was a City policymaker on matters of training and was so deliberately indifferent to the need for more comprehensive training as to render the training deficiency a matter of de facto City policy, he would be liable, if at all, in his official capacity, i.e., rendering the City liable. See Scott v. Clay County, Tenn., 205 F.3d 867, 879 n. 21 (6th Cir.2000).
Thus, for lack of evidence of Kruithoffs personal involvement in either of these particular incidents, it is clear that he should have been granted summary judgment based on qualified immunity — notwithstanding his responsibility, as Chief and City policymaker, for deficiencies in Spike’s and/or officers’ training.
The City of Springboro, on the other hand, may be held liable for a policy of deliberate indifference to obvious inadequacies in training or supervision. Further, as the majority recognizes, the City may not assert qualified immunity in defense of a § 1983 claim. In fact, the majority uses this fact to justify its refusal to consider the City’s appeal. To be sure, the denial of the City’s motion for summary judgment is an interlocutory order that would not ordinarily be subject to immediate review under the collateral order doctrine. We have discretion, however, to exercise pendent appellate jurisdiction over issues not independently appealable if those issues are “inextricably intertwined” with matters properly before us. Turi v. Main Street Adoption Servs., LLP, 633 F.3d 496, 502-03 (6th Cir.2011). Considering the manifestly close relationship between plaintiffs’ theories of liability against Clark, Kruithoff and the City, the exercise of pendent appellate jurisdiction over the City’s appeal would certainly be appropriate in this case.
In evaluating the plaintiffs’ failure-to-train claim against the City, the district court correctly relied on the standard set forth in City of Canton, 489 U.S. at 390, 109 S.Ct. 1197. The court thus nominally recognized that the City’s failure to keep up with Spike’s training requirements had to (1) amount to a policy of deliberate indifference to an obvious deficiency that could foreseeably result in violation of citizens’ constitutional rights, and (2) actually cause plaintiffs’ injuries. The district court found that these two requirements were adequately met even though the rec *796 ord contains no history of prior constitutional violations and fails to substantiate a causal connection between the City’s failure to keep Spike’s training current and either plaintiffs injuries. These defects in the district court’s analysis are particularly glaring when the real basis for Clark’s exposure to liability is kept in focus — i.e., Clark’s failure to respond to Spike’s engagement of each victim in an objectively reasonable manner under the totality of the circumstances. In other words, there is no causal link in the district court’s analysis between the City’s failure to keep up with Spike’s training and Clark’s malevolent or incompetent failure to call Spike off in a reasonable manner.
Thus although the City can be held liable for a policy of deliberate indifference to obvious inadequacies in training or supervision, the record falls short of establishing a sufficient history of canine-unit-related constitutional violations to put the City on notice of obvious inadequacies. Further, the failure-to-train theory against the City suffers from a lack of evidence causally linking any deficiency in training — whether training of Spike or of Clark — to the injuries sustained by plaintiffs. The evidence supporting plaintiffs’ failure-to-train theory of liability against the City for Clark’s use of excessive force is no more than a mere scintilla, insufficient to forestall summary judgment. Accordingly, in my opinion, the ruling denying summary judgment to the City of Springboro should also be reversed.